Bajandas Vélez, Juez Ponente
*1007 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos el Ing. Femando Irizarry (el Sr. Irizarry o el recurrente) mediante el recurso de revisión de epígrafe. Nos solicita que revoquemos la Resolución emitida por la Administración de Reglamentos y Permisos (la ARPE o la agencia) el 13 de noviembre de 2006 y notificada el subsiguiente día 16. Por medio de dicho dictamen, la ARPE denegó la Moción de Reconsideración presentada por el Sr. Irizarry y reiteró su decisión de archivar la querella incoada por éste en contra de Fourteen Angels Investment Group, S.E. (Fourteen Angels o la recurrida). En dicha querella, el recurrente solicitó a la ARPE que dejara sin efecto la Notificación de Aprobación de Permiso de Construcción Certificado, principalmente debido a que los solares en que se desarrolla el proyecto de la recurrida están gravados por condiciones restrictivas incompatibles con los permisos concedidos.
Analizado el recurso y el derecho aplicable, resolvemos revocar la resolución recurrida.
I
Fourteen Angels es propietaria de los solares números siete (7) y ocho (8) ubicados en la Calle Corazones de la Urbanización Milaville, localizada en el Municipio de San Juan. Estos solares fueron agrupados.
Posteriormente, la recurrida solicitó a la ARPE un permiso para realizar una lotificación simple a los fines de segregar cuatro (4) solares de la finca agrupada. Luego de varios trámites procesales, el 22 de noviembre de 2004, la ARPE aprobó el Plano de Inscripción sometido por Fourteen Angels y autorizó la formación de los aludidos solares. Así, el 19 de septiembre de 2005, la recurrida solicitó a la ARPE los permisos de constmcción para desarrollar cuatro (4) viviendas en dichos solares, los que, tiempo después, la ARPE aprobó.
Como consecuencia del comienzo de la construcción del proyecto, el 23 de febrero de 2006, el Sr. Irizarry, vecino colindante de las fincas en controversia, presentó una querella ante la ARPE. Solicitó a la agencia que investigara los hechos relativos a la aprobación del proyecto. Específicamente, adujo que los solares estaban gravados por condiciones restrictivas; que dicha construcción no se le notificó a los vecinos; y que no se consultó a las agencias de infraestructura para saber si existía capacidad residual en los sistemas o si los solares estaban afectados por los planes viales. Precisó que no se consideró la cláusula sobre condiciones restrictivas incluida en la escritura matriz de los solares que lee como sigue: “las edificaciones serán de una planta o dos plantas para una sola familia permitiéndose una casa solamente con garaje y cuarto de servicio, con excepción de los solares 7, 8, 9, 10,11, 12 en los cuales se podrá construir en cada uno de ellos una residencia de dos plantas para dos familias.” (Énfasis nuestro) Añadió que la segregación propuesta por la recurrida se tramitó como una lotificación simple, cuando lo debió haber sido por el mecanismo de desarrollo preliminar. A tenor de lo expuesto, el recurrente solicitó a la ARPE que dejara sin efecto la Notificación de Aprobación de Permiso de Construcción y limitara el proyecto a sólo dos (2) viviendas, conforme a las referidas condiciones restrictivas.
El 18 de abril de 2006, el recurrente envió una comunicación escrita a la ARPE en la cual reiteró su solicitud para que se revocaran los permisos concedidos a Fourteen Angels. Fundamentó su petición en que el Reglamento de Lotificación y Urbanización no permite las lotificaciones simples en solares localizados en municipios que sean parte de un área metropolitana, como lo están los predios en controversia, por estar localizados en la Zona Metropolitana de San Juan. Señaló, además, que las aludidas fincas se verían afectadas por el propuesto ensanche de la carretera estatal PR-1.
*1008 Por otro lado, reiteró la existencia de restricciones de construcción sobre los solares siete (7) y ocho (8), y que la propuesta de construir cuatro (4) viviendas en dos (2) solares agrupados aumentaría la densidad poblacional de la calle, lo que disminuiría la calidad de vida de los residentes y cambiaría la naturaleza del vecindario. Asimismo, sostuvo que a los vecinos y colindantes del proyecto se les privó de participar de los procesos ante la agencia por la falta de notificación.
Más adelante, en carta de 30 de junio de 2006, el representante legal del recurrente le advirtió a la agencia que, de no responder al requerimiento del Sr. Irizarry, se vería precisado a iniciar la acción legal correspondiente. Se quejó además de que la querella presentada por el Sr. Irizarry y su carta posterior no hubiesen sido adjudicadas por la ARPE. Asimismo, argüyó que tanto la lotificación como los permisos de construcción aprobados por la agencia eran nulos. Fundamentó tal conclusión en que se aprobaron en violación a las leyes aplicables y a las servidumbres en equidad que gravan dichos terrenos, entre otros. Para sustentar sus argumentos, acompañó, entre otros documentos, copia de la escritura de segregación y urbanización de 17 de octubre de 1951, de la cual surgen las alegadas condiciones restrictivas que gravan los solares en disputa. 
El 17 de octubre de 2006, notificada el 25 del mismo mes y año, la ARPE emitió una Notificación mediante la cual archivó la querella incoada por el Sr. Irizarry. Inconforme, éste presentó una Moción de Reconsideración en la que adujo que la aludida resolución era contraria a la Ley de Procedimiento Administrativo Uniforme (LPAU), 3 L.P.R.A. see. 2166, ya que no incluyó los fundamentos por los cuales la agencia archivó la querella. Agregó que ARPE erró al no notificar al recurrente el informe de inspección de la querella, según lo requiere la sección 13.05 del Reglamento de Procedimientos Adjudicativos de la Administración de Reglamentos y Permisos, Núm. 6435 de 16 de abril de 2002. Por último, nüevamente expuso sus previos planteamientos relativos a que la lotificación simple aprobada por ARPE era nula y que los permisos de construcción aprobados por la ARPE eran ilegales al violar las servidumbres en equidad que gravan los predios.
En Resolución emitida el 13 de noviembre de 2006 y notificada el día 14 subsiguiente, la ARPE declaró no ha lugar la reconsideración solicitada por el recurrente.
Insatisfecho, el 12 de diciembre de 2006, el Sr. Irizarry presentó el recurso de epígrafe. En éste señaló que:

“1. ERRÓ LA ARPE AL ARCHIVAR LA QUERELLA SIN CUMPLIR CON LAS DISPOSICIONES DE LA SECCIÓN 3.16 DE LA LPAU [.]

2. ERRÓ LA ARPE AL HABER ARCHIVADO LA QUERELLA SIN ANTES HABER NOTIFICADO EL INFORME DE INVESTIGACIÓN AL RECURRENTE [.]

3. ERRÓ LA ARPE AL APROBAR LAS LOTIFICACIONES SIMPLES SOLICITADAS POR LA RECURRIDA EN LOS SOLARES 7 Y 8 DE LA URBANIZACIÓN MILAVILLE [.]

4. ERRÓ LA ARPE AL NEGARSE A REVOCAR LAS LOTIFICACIONES SIMPLES Y EL PLANO DE INSCRIPCIÓN, YA QUE LOS MISMOS SON NULOS POR HABERSE OBTENIDO CON INFORMACIÓN FALSA [.]

5. ERRÓ LA ARPE AL APROBAR LAS LOTIFICACIONES SIMPLES SIN NOTIFICACIÓN A LOS VECINOS COLINDANTES NIAL RECURRENTE [.]

6. ERRÓ LA ARPE AL APROBAR LOS PERMISOS DE CONSTRUCCIÓN SOLICITADOS POR SER DICHOS PERMISOS CONTRARIOS A LAS SERVIDUMBRES EN EQUIDAD DE LA URBANIZACIÓN MILAVILLE[.]”
*1009 El 9 de enero de 2007, Fourteen Angels presentó una Moción de Desestimación por Falta de Jurisdicción. Planteó que el Sr. Irizarry no tenía legitimación activa para presentar el recurso de epígrafe, ya que no demostró ser parte interesada o afectada, ni fundamentó ante la ARPE su interés legítimo para que se le permitiera participar en el procedimiento.
En esencia, en su escrito de oposición, el recurrente sostuvo que tenía legitimación activa para solicitar la revisión judicial de una determinación final de la ARPE que archivó la querella que presentara.
Luego de evaluar ambas posiciones, en la Resolución dictada el 30 de enero de 2007 declaramos no ha lugar la Moción de Desestimación por Falta de Jurisdicción. Concluimos que el recurrente estaba legitimado para presentar el recurso de epígrafe por haber sido parte afectada por el dictamen recurrido y por ser vecino del proyecto en construcción.
Por otro lado, el 6 de febrero de 2007, ARPE presentó una Moción de Desestimación por Falta de Jurisdicción. Argüyó que el proceso de investigación de querellas es discrecional y no final, por lo que la decisión de archivar una querella no puede ser objeto de revisión judicial. A tales efectos, sostuvo que este Tribunal no tiene jurisdicción para atender el recurso de epígrafe. Posteriormente, Fourteen Angels presentó su alegato de oposición al recurso, el que el Sr. Irizarry contestó con una Réplica.
Con el beneficio de las comparecencias de las partes, procedemos a resolver.
II
La función revisora de las decisiones administrativas concedidas a los tribunales apelativos se reduce a determinar si la actuación de la agencia está dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable. T-JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R. 70 (1999). De igual manera, los tribunales apelativos deben conceder gran deferencia a las decisiones administrativas en consideración de la vasta experiencia y conocimiento especializado que ésta posee. Rivera v. A & C Development Corp., 144 D.P.R. 450 (1997).
La Ley de Procedimiento Administrativo Uniforme, en su sección 4.5, delimita el alcance de la revisión judicial de las decisiones administrativas. La misma dispone que las determinaciones de hechos sobre las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obre en el expediente administrativo. No obstante, las conclusiones de derecho serán revisables en todos sus aspectos. 3 L. P.R.A. see. 2175. Así pues, un tribunal apelativo tiene el deber de estudiar la totalidad del expediente y examinar si existe evidencia que sostenga la decisión de la agencia o, si por el contrario, es incompatible con ésta. Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., 144 D.P.R. 425 (1997). Si la interpretación de los hechos es razonable, los tribunales, de ordinario, deben sostener el criterio de la agencia y no sustituirlo por el suyo. Id. Por el contrario, si el tribunal, luego de un estudio y análisis ponderado, descubre que se infringieron directamente valores constitucionales o la actuación administrativa fue arbitraria o irrazonable, el tribunal puede sustituir el criterio de la agencia por el suyo y revocar el dictamen administrativo. Pérez v. VPH Motor Corp., 152 D.P.R.475 (2000).
De este modo, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia recurrida. Al finalizar su función revisora, el tribunal está compelido a considerar la especialización y experiencia de la agencia sobre los asuntos y/o materias que estuvieron ante su consideración. Por tanto, en el descargo de su función deberá caracterizar entre asuntos de discernimiento estatutario o cuestiones de especialización administrativa.
III
El Sr. Irizarry arguye ante nos que la ARPE erró al no cumplir con la sección 3.16 de la LPAU, supra, debido a que no fundamentó su determinación de archivar su solicitud de querella. Aduce además, que la *1010 agencia incidió al no notificarle copia del informe de investigación según lo requiere la sección 13.05 del Reglamento de Procedimientos Adjudicativos de la ARPE, supra.
De otro lado, señala que la ARPE erró al aprobar la lotificación simple de los solares siete (7) y ocho (8), ya que el Reglamento de Lotificación y Urbanización, supra, no permite las lotificaciones simples en municipios que sean parte del área metropolitana, ni cuando el acceso de los solares dependa, entre otras, de carreteras estatales como la PR-1. Añade que las lotificaciones simples y el plano de inscripción autorizados a Fourteen Angels son nulos al ser obtenidos con información falsa y sin haber notificado a los vecinos colindantes. Por último, sostiene que la ARPE incidió al aprobar los permisos de construcción por ser éstos contrarios a las servidumbres en equidad que gravan la Urbanización Milaville.
Por su parte, la ARPE alega que este Tribunal carece de jurisdicción para atender el recurso de epígrafe, pues la determinación recurrida se circunscribe a denegar la investigación solicitada por el Sr. Irizarry. Argumenta que el proceso de investigación de querellas es uno discrecional que carece de finalidad, por lo que está fuera del ámbito de la revisión judicial.
Finalmente, Fourteen Angels alega que “[n]i de la Ley Orgánica de la ARPE, Ley Núm. 76 de 24 de junio de 1975, según enmendada, 23 LPRA §71, ni de los reglamentos de planificación aplicables antes mencionados, surge que la ARPE tenga la obligación de adjudicar derechos privados que alegadamente surgen de servidumbres en equidad. ” Resolvemos.
Según el expediente administrativo ante nos, el Sr. Irizarry presentó escrito ante la ARPE en un formulario titulado “Radicación de Querella” en calidad de vecino colindante del proyecto de construcción de Fourteen Angels. En ésta solicitó a la agencia que investigara los siguientes hechos:

“Construcción de cuatro unidades de vivienda en solares gravados por restricciones de equidad, no se notificó a los vecinos, no se consultó a las Agencias de Infraestructura para saber si hay capacidad residual en los sistemas o si los solares se ven afectados por planes viales, no se consideró las cláusulas restrictivas en la escritura que lee: las edificaciones serán de una o dos plantas para una sola familia permitiéndose una casa solamente con garaje y cuarto de servicio, con excepción de los solares 7,8,9,10,11,12 en los cuales se podrá construir en cada uno de ellos una residencia de dos plantas para dos familias”. 

El Sr. Irizarry sostuvo además que:

“Se consideró la segregación de dos solares como Lotificación simple, lo que es contrario a la reglamentación vigente, Reglamento de Planificación #3.

El Reglamento Adjudicativo de ARPE establece como necesaria la notificación de los acuerdos tomados por ARPE a los vecinos - los propietarios frente a los solares en consideración no fueron notificados de los acuerdos tomados.

No se consultó a las Agencias de Infraestructura.

No se consideró las cláusulas restrictivas en la escritura. ”

(Ver adjunto documento sobre donde se detallan los ERRORES COMETIDOS POR ARPE) 
Asimismo, expuso en el acápite sobre “Comentarios adicionales” del formulario de querella, lo que a continuación se indica:

*1011
“Estos solares están gravados por unas restricciones de equidad que están descritas en la escritura matriz (ver copia de la escritura matriz incluida).

La segregación se presentó como una lotificación simple. En el Area Metropolitana de San Juan no es permitida la lotificación simple y tendría que ser presentado por el mecanismo de desarrollo preliminar.

La propiedad principal está afectada por un ensanche de vía - PR#1- y si se le resta el ensanche, el remanente no daría para cuatro solares de 900 metros por la zonificación existente de R-l. ” 
Finalmente, describió que el remedio que interesaba obtener de la ARPE era el siguiente: “Que se deje sin efecto la Notificación de Aprobación de Permiso de Construcción Certificado para la construcción de cuatro viviendas y se limite a dos según condiciones restrictivas de la propiedad. ” 
No obstante lo reclamado por el recurrente, la ARPE archivó la querella sin atender los méritos de las alegaciones allí esbozadas. En la Notificación de Archivo, la ARPE mencionó que el 3 de agosto de 2006, el Inspector Luis Delgado hizo una inspección del proyecto y "... encontró que sólo se estaba construyendo una (1) residencia con el permiso de construcción núm. 05CX2-CET00-08289 [y que] [e]n los otros lotes no se estaba trabajando al momento de la visita”. Finalmente, hizo un historial de los permisos y autorizaciones concedidas al proyecto de la recurrida.
A pesar de que somos conscientes de la doctrina imperante respecto a que no es revisable por los tribunales la decisión de una agencia de no iniciar un procedimiento de querella, precisa aclarar que esta no es la situación de la que trata el caso ante nos. El recurrente de autos presentó una querella en la que alegó, en esencia, que la recurrida Fourteen Angels obtuvo los permisos para la construcción de su proyecto en contravención a las servidumbres en equidad que gravan los solares y al Reglamento de Lotificación y Urbanización. A base de ello, le solicitó a la ARPE que dejara sin efecto tales permisos; no le solicitó a la ARPE que ella iniciara un procedimiento de querella.
La presentación de una querella por quien está legitimado para ello está autorizada por la sección 3.2 de la LPAU, 3 LPRA See. 2152, que dispone que “ ... el procedimiento adjudicativo ante una agencia podrá iniciarse por la propia agencia o con la presentación de una querella, solicitud o petición ...” Asimismo, la sección 3.01 del Reglamento de Procedimientos Adjudicativos de la ARPE dispone que “[e]l procedimiento adjudicativo ante la ARPE dará comienzo con la radicación de cualquier solicitud, petición o querella ...”. Por su parte, la sección 13.02 del aludido Reglamento establece que las solicitudes de investigación y querellas pueden ser de origen interno o externo. Respecto a esta última, el Reglamento dispone que “[sjerán aquellas presentadas por ciudadanos particulares o agencias mediante carta o personalmente ...”.
Por otro lado, la sec. 14.03 del Reglamento de Procedimientos Adjudicativos de la ARPE, supra, dispone que:
“Si ARPE determina que no existen hechos concretos y específicos que justifiquen el inicio de una acción administrativa o judicial o que la alegada infracción no corresponde a funciones de la ARPE, se desestimará la querella...”. (Énfasis nuestro)
De dicha sección se desprende con meridiana claridad que aunque la ARPE cuenta con discreción para determinar si inicia una acción administrativa o no, esa discreción no es ilimitada. El aludido Reglamento le impone la obligación de evaluar los hechos específicos que aduce la persona que acude ante ella a los fines de determinar si son concretos y específicos, de suerte que justifiquen la concesión de un remedio por parte de la agencia. Además, le requiere evaluar si la alegada infracción corresponde o no a sus funciones delegadas.
Asimismo, el Reglamento de Procedimientos Adjudicativos reconoce que el poder de la ARPE "... para *1012 revocar autorizaciones y permisos es inherente a la autoridad para concederlos, toda vez que la función fiscalizadora de la agencia no culmina con la concesión del permiso, sino que su jurisdicción se extiende, una vez concedido éste, al amparo de la concesión misma”. Además, dispone que:

“[Cjualquier infracción a los términos y condiciones de una autorización, permiso, resolución o determinación de la ARPE, podrá conllevar la revocación de la misma con las multas, sanciones y penalidades consecuentes con la autoridad legal y reglamentaria de la APRE. 

Conforme a la sección 19.02 del referido Reglamento, el proceso de revocación de permiso podrá iniciarse por la ARPE misma o a solicitud de parte. Así, “[e]ste proceso podrá iniciarse con una querella de origen interno u origen externo ...”. 

Por su parte, la sección 19.03 señala cuándo procede que se inicie un proceso de revisión y revocación de un permiso:

“(1) Autorizaciones y Permisos por Certificación - En todo caso de autorización o permiso solicitado mediante el procedimiento de certificación, según provisto por la Ley 135 del 15 de junio de 1967, según enmendada, es responsabilidad del ingeniero, arquitecto o agrimensor proveer la información, incluso el análisis ambiental, que sea veraz, correcta y completa conforme a las leyes y reglamentos vigentes en atención a lo cual la ARPE procederá a conceder la autorización o el permiso de la manera más expedita posible. ”

Cualquier autorización o permiso así obtenida podrá ser revocada, previa la notificación de intención de revocar y citación a vista dirigida a la parte y al profesional que le representa, cuando se establezca que la autorización o permiso obtenido fue sustancialmente producto de fraude o error o si la obra está siendo construida en contravención con lo aprobado. La parte será apercibida de la autoridad de la ARPE para tomar la acción descrita, así como las otras acciones disponibles, en el formulario de solicitud de servicio correspondiente, entre éstas:

(b) Si la obra está en proceso de construcción, la ARPE podrá expedir órdenes de hacer, de no hacer, y de cese y desistimiento o paralización; presentar recursos de interdicto, mandamus, nulidad o cualquier otra acción para impedir, prohibir, anular, vacar, remover o demoler cualquier edificio o uso, hechos o mantenidos en infracción del Reglamento de Certificación o imponer las multas administrativas correspondientes.

(2) Otras Autorizaciones y Permisos - La ARPE podrá revocar cualquier otro permiso o autorización por infracción a los términos de la misma o a la reglamentación vigente, o cuando se establezca que la decisión tomada o permiso obtenido fue producto defraude o error. ” (Énfasis nuestro)
Véase además, el Reglamento para la Certificación de Obras y Permisos Núm. 6494, 29 de junio de 2002, pág. 90.
La querella o solicitud de investigación que presentara el Sr. Irizarry ciertamente cumplió con las mencionadas disposiciones legales. Tanto así, que según reza la Resolución recurrida, el Inspector Luis Delgado hizo una inspección del proyecto el 3 de agosto de 2006 en la que encontró que sólo se estaba construyendo una residencia. 
No obstante, el hallazgo anterior sirvió de base para que la ARPE archivara la querella presentada por el recurrente. Al así disponer, la agencia erró. La ARPE no se percató de que las autorizaciones dadas a Fourteen Angels incluía cuatro viviendas y que el recurrente estaba planteando que tales cuatro casas no podían ser construidas en los solares por razón de las restricciones que existen sobre dichos predios, según surgen de la *1013 Escritura número 148 de 17 de octubre de 1951 y la Escritura 157 de 14 de agosto de 2002, obrantes en el expediente administrativo.
En Asoc. Vec. Urb. Huyke v. Bco. Santander, 157 DPR 521 (2002), nuestro Tribunal Supremo aclaró que tanto la Junta de Planificación como ARPE deben velar por las restricciones impuestas sobre las propiedades a la hora de emitir sus permisos. Así, precisó que:
"... la mera concesión de un permiso por la Junta de Planificación o por A.R.P.E. no tiene el efecto ni el alcance de anular restricciones privadas que resulten incompatibles con el permiso concedido. ” (Itálicas en el original) Asoc. Vec. Urb. Huyke v. Bco. Santander, Id., pág. 554.
Dicho de otro modo, en el aludido caso, el Tribunal Supremo enunció el deber de la ARPE y de la Junta de Planificación de velar porque los permisos y autorizaciones que concedan no resulten incompatibles con las restricciones privadas que puedan afectar un predio.
Según surge del expediente administrativo, Fourteen Angels compró los solares en controversia por medio de la Escritura 157 otorgada el 14 de agosto de 2002. En ésta se indicó que “[l] la antes descrita propiedad se encuentra afecta: a)., b) Condiciones restrictivas impuestas mediante la escritura número ciento cuarenta y ocho, otorgada en San Juan, el diecisiete de octubre de mil novecientos cincuenta y uno... ”. Además, en la mencionada Escritura 157 se aclaró que el inmueble estaba sujeto a servidumbres de condiciones restrictivas según surgían del Registro de la Propiedad. 
De igual forma, advertimos de la Escritura 148 otorgada el 17 de octubre de 1951, lo siguiente:
“En vista de que la propiedad de referencia habrá de ser urbanizada, los dueños de la misma han resuelto dejar los solares descritos en el apartado CUARTO anterior procedentes de dicha propiedad sujetos a un sistema de limitaciones y restricciones sobre construcción que preste mayor uniformidad a la forma de construcción de los edificios que en dichos solares se levanten por terceras personas, y al efecto por la presente establecen las siguientes restricciones y limitaciones [.]” (Enfasis nuestro). 
En virtud de ello, se dispuso que:
“Las edificaciones serán de una o dos plantas para una sola familia, permitiéndose una casa solamente con su garaje y cuarto de servicio, con excepción de los solares siete, ocho, nueve, diez, once y doce en los cuales se podrá construir en cada uno de ellos una residencia de dos plantas para dos familias... ”. (Enfasis nuestro). 
Además, fue reafirmado que:
“Las anteriores restricciones han sido impuestas como un grav[a]men sobre la propiedad antes descrita y se tomará nota de ello en el Registro de la Propiedad a fin de que con cada venta que se efectúe o tra[n] smisión de derechos con relación a los solares procedentes de la urbanización se le impongan la obligación de respetar las referidas restricciones que se mencionan en el apartado SEXTO precedente. ” (Enfasis nuestro). 
Por lo tanto, a la ARPE no le asiste la razón al señalar que la resolución recurrida no puede ser objeto de revisión judicial. Entendemos que lo es porque al archivar la querella presentada por el recurrente, la ARPE abdicó su deber ministerial de velar porque las autorizaciones y permisos que concede no resulten incompatibles con las condiciones restrictivas de los predios en controversia.
*1014 También erró al no atender las alegaciones del recurrente respecto a que no procedía la lotificación simple de los solares debido a que ubican en la zona metropolitana de San Juan y se afectan por el ensanche de la carretera PR-1. El Reglamento de Lotificación y Urbanización, Reglamento Núm. 6283 aprobado por la Junta de Planificación el 3 de febrero de 2001, limita las lotificaciones simples a áreas fuera de la zona metropolitana y que no tengan accesos o dependan de vías como la carretera PR-1. La sección 6.02 del mencionado Reglamento dispone:

“Por lo rudimentario de los requisitos para este tipo de lotificación, [simple] éstas deberán localizarse fuera de la zona costanera, según definida en el Plan de Manejo de la Zona Costanera, y fuera de los municipios que sean parte de un área metropolitana conforme al último censo o donde se esté realizando un Plan de Ordenación Territorial, Plan de Usos de Terrenos o Reglamento de Ordenación, así lo disponga. Tampoco podrán autorizarse lotificaciones simples cuando su acceso dependa de las siguientes vías arteriales: PR-1, PR-2, PR-3 y PR-30 y PR-53. (Énfasis nuestro).

1.Las disposiciones de esta Sección no aplicarán a los municipios que siendo parte de un [AJrea Estadística Metropolitana (AEM) posean una población de 50,00 habitantes ó más, conforme al Censo de Población y Vivienda vigente. ” (Enfasis nuestro)
En consideración a lo expuesto, determinamos que la ARPE erró al archivar la querella presentada por el Sr. Irizarry. Además, concluimos que tal dictamen es revisable por haberse emitido en contravención a las funciones encomendadas a la ARPE. De este modo, procede revocar la resolución recurrida.
IV
Por los fundamentos expuestos, se revoca la Notificación de Archivo emitida por la ARPE el 13 de noviembre de 2006 y notificada el 16 de igual mes y afio.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2008 DTA 41
1. Apéndice del recurso pág. 58.
2. Reglamento de Lotificación y Urbanización, Núm. 4867, Junta de Planificación, 26 de noviembre de 1992, según enmendado por el Reglamento Núm. 6283 de 3 de febrero de 2001.
3. El 30 de agosto de 2006, el Sr. Irizarry presentó ante el Tribunal de Primera Instancia, Sala Superior de San Juan (el TPI) un recurso de mandamus en contra de la ARPE. Así, solicitó que el TPI le ordenara a la agencia cumplir con su deber ministerial de adjudicar las querellas pendientes ante sí. Ese día, también presentó una demanda en contra de la recurrida y de la ARPE sobre sentencia declaratoria e injunction por violación a las servidumbres en equidad.
El 16 de noviembre de 2006, el TPI archivó el recurso de mandamus por desistimiento del recurrente.
4. Alegato de la recurrida, pág. 10.
5. Aunque la ARPE alega que el recurrente presentó una solicitud de querella, el formulario de la ARPE utilizado por éste lleva el acápite de “Radicación de Querella”. Apéndice del recurso, pág. 58.
6. Apéndice del recurso, pág. 58.

*1015
7. Id.

8. Apéndice del recurso, pág. 58.
9. Apéndice del recurso, pág. 59.
10. En la resolución recurrida, la ARPE dispuso:

“La solicitud de investigación sobre querella presentada fue considerada por el Gerente Interino del Centro Expreso de Trámite de la ARPE, quién acordó; ARCHIVAR LA SOLICITUD DE QUERELLA”.

11. Apéndice del recurso, pág. 18.
12. Véase Luce & Co. v. Junta de Relaciones del Trabajo, 82 DPR 96 (1961); D. Fernández Quiñones, Derecho Administrativo y Ley de Proced. Adm. Uniforme. Ed. Forun. 2nda ed., 2001, pág. 427.
13. Sección 19.01 del Reglamento de Procedimientos Adjudicativos de la ARPE.
14. Id.
15. Sección 19.02 del Reglamento de Procedimientos Adjudicativos de la ARPE.
16. Apéndice del recurso, pág. 18.
17. Apéndice del recurso, pág. 87.
18. Apéndice del recurso, pág. 96.
19. Apéndice del recuso, pág. 38.
20. Apéndice del recurso, pág. 39.
21. Apéndice del recurso, pág. 41.